```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

| | |
|---|---|
| JACK NORMAN CATES, | ) |
|                 Plaintiff, | ) |
| v. | ) 1:20cv200 |
| JESUS SANDOVAL, Individually and as an Officer of the Durham Police Department; THE CITY OF DURHAM, NORTH CAROLINA; THE DURHAM POLICE DEPARTMENT; and THE CITY COUNCIL OF THE CITY OF DURHAM, NORTH CAROLINA, | ) ) ) ) ) ) ) |
|                 Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

    Plaintiff Jack Norman Cates brings this action against Defendants Jesus Sandoval and the Durham Police Department, the City of Durham, and the City Council of the City of Durham (collectively "City of Durham" or "City Defendants") alleging multiple counts stemming from an investigation of Cates in January 2017. (Doc. 3.) Before the court are motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Sandoval (Doc. 7) and the City of Durham (Doc. 9), as well as a motion to amend the complaint filed by Cates (Doc. 21). The motions are fully briefed. For the reasons set forth below, Cates's motion to amend his complaint will be granted, Sandoval's motion to dismiss will be granted in part and denied in part, and the City of Durham's

motion to dismiss will be granted.

I. **BACKGROUND**

Because the court grants Cates's motion to amend his complaint, the court recounts the facts as set out in the proposed pleading in the light most favorable to Cates.

Cates was an agent with the Alcohol Law Enforcement ("ALE") branch of the North Carolina State Bureau of Investigation ("SBI") when, in January 2017, a woman alleged he and other ALE agents raped, kidnapped, and sexually assaulted her. (Doc. 21-1 ¶¶ 8, 10.) Defendant Jesus Sandoval, a Durham Police Department officer, investigated the sexual assault complaint against Cates, ultimately applying for and obtaining a search warrant as to him. (Id. ¶¶ 12-15.) According to Cates, the sexual assault allegations against him were false. (Id. ¶ 11.) Moreover, Cates alleges that Sandoval and the Durham Police Department "knew or should have known that there was no legal basis" for the search warrant, because a surveillance videotape that Sandoval allegedly viewed before applying for the warrant showed there was no sexual assault. (Id. ¶¶ 12, 14.) As a result of the search warrant, Cates claims he was "detained by the North Carolina SBI at SBI headquarters" where he "was not permitted to leave on his accord" and was "humiliated by being exhibited to colleagues and co-workers." (Id. ¶ 16.)

Cates filed a five-count complaint on January 10, 2020, in

2

the General Court of Justice, Superior Court Division in Durham County, North Carolina, alleging false imprisonment and arrest (Count I); assault and battery (Count II); violations of the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution (Count III); violations of Article I, Sections 18 and 20 of the North Carolina Constitution (Count IV); and "infliction of emotional distress" (Count V). (Doc. 3.) On March 2, 2020, Defendants filed their Notice of Removal with this court. (Doc. 1.) On March 9, 2020, both Sandoval and the City of Durham filed motions to dismiss. (Docs. 7, 9.) In response, on April 29, 2020, Cates moved to amend his complaint (Doc. 21), and Sandoval has responded to that motion (Doc. 24).

**II. ANALYSIS**

    **A. Motion to Amend Complaint**

Because Cates moved to amend his complaint in response to the pending motions to dismiss, the court must decide whether the dispositive motions have been rendered moot. While this is true in some cases, here the proposed amendments are minor and the parties have addressed the merits of the new allegations in the combined briefing. Judicial efficiency therefore warrants addressing all motions at this time, starting with the motion to amend the complaint.

Under the Federal Rules of Civil Procedure, once 21 days elapses from service of a motion to dismiss, a plaintiff may amend

3

a pleading only with the opposing party's written consent or leave of court.  See Fed. R. Civ. P. 15(a)(2).  Leave should be freely given "when justice so requires."  Id.  Leave to amend will be denied only if (1) the amendment would prejudice the opposing party, (2) there is bad faith on the part of the moving party, or (3) the amendment would be futile.  Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).  Here, more than 21 days elapsed since Defendants filed their motions to dismiss Cates's original complaint.  And it is unclear if Cates has the consent of the parties to amend.[1]

The proposed amendments are relatively minor.  Cates has essentially added limited facts to his prior complaint.  For example, he alleges that the sexual assault allegations against him were false, that Sandoval should have known they were false, that he was detained by the SBI as a result of the allegedly improper search warrant Sandoval obtained, and that he was falsely arrested on or about January 12, 2017, at North Carolina SBI headquarters.  (See Doc. 21-1 ¶¶ 11, 12, 16, 21.)

There are no allegations of bad faith on the part of Cates,[2]

---

[1] Only Sandoval responded to Cates's motion for leave to amend the complaint. (Doc. 24.)  Sandoval initially argues that Cates failed to provide good cause for his amendment (see id. at 4) but then concludes, "Ofc. Sandoval recognizes the Court's discretion in deciding whether to allow this Motion, and therefore does not oppose it." (Id. at 7.)

[2] Again, Sandoval initially suggests that Cates does not have good cause for his amendment, but ultimately does not oppose amendment. (Doc. 24 at 4, 7.)

4

nor would amendment be futile.  There is also no prejudice.  See
Laber, 438 F.3d at 427 (prejudicial amendment is one that raises
a new legal theory right before trial, as opposed to an amendment
that merely adds a new theory of recovery before any discovery);
Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)
("Because defendant was from the outset made fully aware of the
events giving rise to the action, an allowance of the amendment
could not in any way prejudice the preparation of the defendant's
case.").  Given the early stage of litigation, the fact that
Defendants would have been on notice of the general nature of
Cates's allegations from his original complaint, and the strong
policy in favor of granting leave to amend, the court will grant
Cates's motion to amend.  (Doc. 21.)

    **B. Motions to Dismiss**

A motion to dismiss under Rule 12(b)(6) is meant to "test[]
the sufficiency of a complaint" and not to "resolve contests
surrounding the facts, the merits of a claim, or the applicability
of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943,
952 (4th Cir. 1992).  To survive such a motion, "a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'"  Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).  In considering the motion, a
court will "assume as true all . . . well-pleaded facts and draw

5

all reasonable inferences in favor of the plaintiff." Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 452 (4th Cir. 2017). "Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations to raise a right to relief above the speculative level so as to nudge the claims across the line from conceivable to plausible." Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ., 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016) (alterations and quotations omitted). Mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

### 1. Defendant Jesus Sandoval

Sandoval first raises a defense of public official immunity as to Cates's common law tort counts. (See Doc. 8 at 5-6.) Sandoval is being sued in both his official and individual capacities. As for official capacity immunity, "a municipality and its officers or employees sued in their official capacities are immune from suit for torts committed while the officers or employees are performing a governmental function." Mullins by Mullins v. Friend, 449 S.E.2d 227, 230 (N.C. App. 1994). "A police officer in the performance of his duties is engaged in a governmental function." Id. While a city can waive its official immunity, see id., the plaintiff has to allege waiver, which Cates has not done. Accordingly, Cates failed to state a claim against

6

Sandoval in his official capacity.

Turning to individual immunity, "[t]he general rule is that a public official is immune from personal liability for mere negligence in the performance of his duties, but is not immune if his actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." Id. Police officers are public officials. Shuping v. Barber, 365 S.E.2d 712, 716 (N.C. App. 1988). As Sandoval acknowledges, public official immunity can be overcome when a police officer is alleged to have acted with malice by want of probable cause. See Doc. 8 at 6; Fowler v. Valencourt, 423 S.E.2d 785, 788 (N.C. App. 1992), rev'd in part, 435 S.E.2d 530 (N.C. 1993) ("[M]alice can be inferred from the want of probable cause alone."). Here, Cates has alleged that Sandoval knew the sexual assault allegations against Cates were false because he watched the surveillance tape showing as much. (Doc. 21-1 ¶¶ 11-12.) To the extent that Sandoval allegedly saw the tape and knew that no sexual assault had occurred, and with no other facts in the record before the court at this time, it is plausible that Sandoval lacked probable cause to support the search warrant for Cates. Accordingly, accepting as true the factual allegations in the amended complaint for the purposes of the present motion, the court finds that Sandoval cannot be determined to have individual public official immunity at this time.

Having addressed the immunity issues, the court turns to the

7

five counts in Cates's amended complaint.

Count I alleges false imprisonment and arrest. "A false arrest is an arrest without legal authority and is one means of committing a false imprisonment." Marlowe v. Piner, 458 S.E.2d 220, 223 (N.C. App. 1995). Cates has alleged that he was "falsely arrested and imprisoned on one or more occasions, and specifically on or about January 12, 2017 at North Carolina SBI headquarters." (Doc. 21-1 ¶ 22.) The complaint provides minimal details, and elsewhere refers to Cates being merely "detained" on this same date. (See id. ¶ 16.) However, at this point the court cannot say that Cates has not met his burden at the motion to dismiss stage on his false arrest claim. If Cates was arrested "based on" the search warrant (see id.), and if the search warrant lacked probable cause, then Cates has stated a claim for false arrest. See Moore v. Evans, 476 S.E.2d 415, 421 (N.C. App. 1996) (an arrest "without probable cause lacks legal authority and is therefore unlawful"). The court will therefore deny Sandoval's motion to dismiss as to Count I.

In Count II, Cates alleges assault and battery. In North Carolina, an assault "is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow." Dickens v. Puryear, 276 S.E.2d 325, 330 (N.C. 1981). The action for battery prevents the "intentional and unpermitted contact with one's person" while the

8

action for assault protects the "freedom from apprehension of a harmful or offensive contact with one's person." Id. The apprehension "must be one of an immediate harmful or offensive contact, as distinguished from contact in the future." Id.

Here, Cates has not pled any facts that he was in apprehension of an immediate harmful or offensive contact from Sandoval, or that Sandoval caused any intentional and unpermitted contact with Cates. Sandoval appears from the amended complaint not to have interacted personally with Cates at all. The amended complaint alleges only that Sandoval "viewed the videotape" and "presented a signed Search Warrant" to the Superior Court of Durham County. (Doc. 21-1 ¶¶ 12-13.) It is not even clear that Cates knew about these actions, or that anything Sandoval did put Cates in apprehension of immediate harmful or offensive contact. Accordingly, the court will dismiss Count II in the amended complaint as to Sandoval.

In Count III, Cates brings a claim under 18 U.S.C. § 1983 alleging violations of the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution. To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

Cates is not clear regarding what § 1983 claims he brings.

9

The amended complaint -- which, despite being amended, remains skeletal -- alleges that "Defendants' actions constituted violations of the Plaintiff's rights guaranteed by the United States Constitution and it's [sic] Amendments, including *inter alia*, the First, Fourth, Fifth & Fourteenth Amendments." (Doc. 21-1 ¶ 30.) "[M]ere conclusory statements" do not survive a 12(b)(6) motion. Iqbal, 556 U.S. at 678. The court struggles to discern what cognizable First or Fifth Amendment[3] violation has been alleged.[4]

Construed in the light most favorable to him, Cates's allegations most likely claim a violation of his Fourth and Fourteenth Amendment rights stemming from the issuance of the warrant without probable cause. (See Doc. 21-1 ¶¶ 11-16.)

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. This protection against unreasonable seizures "protects individuals from being seized in the absence of probable cause." Swick v. Wilde, No. 1:10-CV-303,

---

[3] To the extent Cates is alleging a Fifth Amendment due process violation, the Fifth Amendment due process clause applies solely to the federal government, and Cates is suing only state actors. See Dusenbery v. United States, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").

[4] The court relies on the parties' briefing as an important part of the adversarial system to, as relevant here, address the sufficiency of the complaint. Unfortunately, Sandoval does not address the specific amendments and whether Cates has pled a cognizable § 1983 claim under each.

10

2012 WL 3780350, at *7 (M.D.N.C. Aug. 31, 2012). Probable cause must be based on a truthful affidavit. See Franks v. Delaware, 438 U.S. 154, 164-65 (1978) ("When the Fourth Amendment demands a factual showing sufficient to compromise 'probable cause,' the obvious assumption is that there will be a truthful showing." (citation and alterations omitted)). A complaint that an officer knowingly filed a false affidavit can state a claim under § 1983. See Miller v. Prince George's Cnty., MD, 475 F.3d 621, 630–31 (4th Cir. 2007) ("An investigation need not be perfect, but an officer who intentionally or recklessly puts lies before a magistrate, or hides facts from him, violates the Constitution unless the untainted facts themselves provide probable cause.").

The facts set out, even in Cates's amended complaint, are minimal. However, at this early stage Cates has met the minimal threshold of plausibility. He alleges that Sandoval viewed a videotape allegedly proving that he did not commit a sexual assault but nevertheless applied to a local judge for, and received, a search warrant based on false information. (Doc. 21-1 ¶¶ 12-15.) Because of this warrant, Cates alleges, he was arrested by the North Carolina SBI. (Id. ¶ 22.) If true, Cates has stated a plausible claim under § 1983. The court will therefore deny Sandoval's motion to dismiss as to Count III.

In Count IV, Cates alleges violations of Article I, Sections 18 and 20 of the North Carolina Constitution.

11

Article I, Section 18 states, "All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18. This so-called "open doors" provision has been interpreted as granting standing to anyone who has suffered a harm to pursue judicial relief. See Yarbrough v. E. Wake First Charter Sch., 108 F. Supp. 3d 331, 342 (E.D.N.C. 2015) (reviewing a claim brought under Section 18); Boyce v. N. Carolina State Bar, 814 S.E.2d 127, 132 (N.C. App. 2018). But "the very fact plaintiff has asserted his claims in a court of law contradicts his own argument that defendant has somehow barred plaintiff a judicial remedy." Teleflex Info. Sys., Inc. v. Arnold, 513 S.E.2d 85, 88 (N.C. App. 1999). So, too, here. Cates has not alleged any facts showing that Sandoval has barred him from seeking a judicial remedy for his alleged harms -- indeed, the very existence of this action shows otherwise.

Article I, Section 20 states, "General warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and shall not be granted." N.C. Const. art. I, § 20. This provision, analogous to the Fourth Amendment of the U.S. Constitution, "likewise prohibits

12

unreasonable searches and seizures and requires that warrants be issued only on probable cause." State v. Allman, 794 S.E.2d 301, 303 (N.C. 2016).

However, Cates is only permitted to bring a direct claim under the North Carolina Constitution if there is no adequate state-law remedy available to provide relief. See Edwards v. City of Concord, 827 F. Supp. 2d 517, 521 (M.D.N.C. 2011) ("To assert a direct constitutional claim . . . a plaintiff must allege that no adequate state remedy exists to provide relief for the injury." (quoting Copper v. Denlinger, 688 S.E.2d 426, 428 (N.C. 2010)). "Put another way, 'a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim.' Direct constitutional claims, therefore, protect a plaintiff's right to redress when doctrines like sovereign immunity preclude the possibility of common law remedies." Swick, 2012 WL 3780350, at *31 (quoting Craig v. New Hanover Cnty. Bd. of Educ., 678 S.E.2d 351, 355 (N.C. 2009)).

Here, Cates's claim is for unreasonable search and seizure under the North Carolina Constitution. North Carolina courts have identified corresponding adequate state claims such as false imprisonment and trespass to chattels. See Rousselo v. Starling, 495 S.E.2d 725, 727 (N.C. App. 1998). The court is not dismissing Cates's false imprisonment claim, i.e., he has "the opportunity to enter the courthouse doors and present his claim." See Swick,

13

2012 WL 3780350, at *31.  This provides Cates an adequate state-law remedy, and the court will therefore dismiss Count IV as to Sandoval.[5]

Finally, in Count V, Cates alleges "infliction of emotional distress."  (Doc. 21-1 ¶¶ 39-42.)  Cates does not state whether he is asserting a claim for intentional or negligent infliction of emotional distress, so the court will consider both.

The tort of intentional infliction of emotional distress ("IIED") consists of "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another."  Dickens, 276 S.E.2d at 335.  The tort can also exist when the defendant's actions indicate a reckless indifference to the possibility of severe emotional distress.  Id.  The elements of the tort of negligent infliction of emotional distress require that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress."  Johnson v. Ruark Obstetrics & Gynecology

---

[5] Even if Cates does not ultimately succeed on his false imprisonment claim, that does not mean he lacked an adequate state-law remedy.  An available claim does not fail to provide an adequate remedy merely because the claim is meritless.  See Edwards, 827 F. Supp. 2d at 524 (collecting cases and concluding "[n]or have North Carolina courts found that an available claim fails to provide an adequate remedy because a plaintiff may not be able to meet his factual proof").

14

Assocs., P.A., 395 S.E.2d 85, 97 (N.C. 1990). In either context, "severe emotional distress" means "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Id.; see also Holloway v. Wachovia Bank & Tr. Co., 452 S.E.2d 233, 243 (N.C. 1994) ("[T]he severe emotional distress required for IIED is the same as that required for negligent infliction of emotional distress.").

This is a high bar, and Cates does not make any specific factual allegations to establish the requisite severe emotional distress for either an intent- or negligence-based claim. Cates alleges "mental anguish, trauma and embarrassment" as a result of the investigation. (Doc. 21-1 ¶ 41.) He has alleged no further facts showing a "severe and disabling" mental or emotional condition. See Ruark, 395 S.E.2d at 97. Nor has he pled facts showing he sought therapy or treatment for anything arising out of these incidents. See Swick, 2012 WL 3780350, at *30. "Temporary anxiety" is not enough. See Ruark, 395 S.E.2d at 97. Nor is the mere assertion of "great embarrassment." Morrow v. Kings Dep't Stores, Inc., 290 S.E.2d 732, 737 (N.C. App. 1982). Accordingly, the court will dismiss Count V as to Sandoval.

15

### 2. Defendants Durham Police Department, City of Durham, and City Council of the City of Durham

Cates alleges the same five counts against the three City of Durham Defendants. These Defendants collectively moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 9.) Cates did not file a response. While the "motion to dismiss is unopposed and may ordinarily be granted on that basis, see Local Rule 7.3(k), the court must examine the motion on its merits." See Ulhorn v. Fletcher, No. 1:18CV137, 2018 WL 4055267, at *2 (M.D.N.C. Aug. 24, 2018) (citation omitted).

As to the City of Durham, it argues that Cates failed to properly serve it, depriving this court of personal jurisdiction over it. (Doc. 9 at 4-5.) "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." Ulhorn, 2018 WL 4055267, at *2 (quoting Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998)). Although service is not invalided by every "technical violation" of the rules, "the rules are to be followed, and plain requirements for the means of effecting service of process may not be ignored." Id. (quoting Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984)).

Service on a city is proper when the summons and complaint are delivered to the city's chief executive officer or served as prescribed by that state's law. Fed. R. Civ. P. 4(j)(2). The

16

City of Durham's "chief executive officer" is its city manager. See Baker v. Durham Cnty. S.W.A.T. Team, No. 1:14CV878, 2016 WL 2621972, at *2 (M.D.N.C. May 5, 2016), adopted sub nom. Baker v. Durham S.E.T., No. 1:14CV878, 2016 WL 3747615 (M.D.N.C. July 11, 2016) ("Durham's Code of Ordinances does not refer to a 'chief executive officer' as a top ranking position that oversees the City's operations, however the City's administrative head is the city manager."). North Carolina law allows a plaintiff to serve a city's mayor, city manager, or clerk. See id.; N.C. R. Civ. Pro. 4(j)(5).

Here, Cates served the Durham city attorney, Kimberly Rehberg. (Doc. 1-1 at 9.) Ms. Rehberg is not the mayor, city manager, or clerk for the City of Durham. Accordingly, because Cates failed to properly serve the City of Durham as mandated by the Federal Rules of Civil Procedure, this court lacks personal jurisdiction over it.

As to the Durham Police Department and the City Council of the City of Durham, they argue that neither has the legal capacity to be sued. (Doc. 9 at 7-8.) They are correct. "[T]he capacity of a governmental body to be sued in federal court is governed by the law of the state in which the federal court is located." Fisher v. Winston-Salem Police Dep't, 28 F. Supp. 3d 526, 534 (M.D.N.C. 2014); Fed. R. Civ. Pro. 17(b)(3). "Under North Carolina law, a police department is not an independent legal entity with

17

the capacity to sue and be sued." Townsend v. City of Fayetteville, No. 5:13-CV-195, 2013 WL 2240996, at *1 (E.D.N.C. May 21, 2013); see also Wright v. Town of Zebulon, 688 S.E.2d 786, 789 (N.C. App. 2010) ("In North Carolina there is no statute authorizing suit against a police department." (citation omitted)). And while a city can be sued, see N.C. Gen. Stat. § 160A-11 (2019), there is likewise no statute authorizing a city council to be sued.

Accordingly, the court will grant the City of Durham's motion to dismiss, and these claims will be dismissed without prejudice. (Doc. 9.)

### III. CONCLUSION

For the reasons stated above,

IT IS THEREFORE ORDERED that Defendant Jesus Sandoval's motion to dismiss (Doc. 7) is GRANTED as to Counts II, IV, and V, which are DISMISSED, and DENIED as to Counts I and III as they raise claims against Sandoval in his individual capacity. Defendants Durham Police Department, City of Durham, and City Council of the City of Durham's motion to dismiss (Doc. 9) is GRANTED, and the complaint is DISMISSED against them without prejudice. Plaintiff Jack Norman Cates's motion to amend his complaint (Doc. 21) is GRANTED, and Cates shall file a copy of the proposed amended complaint in the form of Exhibit 1 to Docket Entry 21 forthwith. The case shall proceed only as to those claims and

18

Defendants that have survived the motions to dismiss as noted in this memorandum opinion and order.

/s/   Thomas D. Schroeder
United States District Judge

September 22, 2020